IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| GLENN L. FOWLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:08-CV-080 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits. For the reasons set forth herein, defendant's motion for summary judgment [doc. 10] will be granted, and plaintiff's motion for judgment on the pleadings [doc. 8] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff applied for benefits in March 2006, claiming to be disabled by a hernia and by arthritic pain in his shoulder, back, and legs. [Tr. 44, 53, 160]. Plaintiff alleges a disability onset date of June 15, 2005. [Tr. 44]. His claims were denied initially and on

reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in May 2007.

In September 2007, the ALJ issued a decision denying benefits. He determined at step two of the sequential evaluation process that plaintiff "does not have any impairment or impairments that significantly limit his ability to perform basic work-related activities; therefore, the claimant does not have a severe impairment." [Tr. 14].

Plaintiff then sought review from the Commissioner's Appeals Council. On February 5, 2008, review was denied. [Tr. 4]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981; 416.1481. Through his timely complaint, plaintiff has properly brought his case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Background and Testimony*

Plaintiff was born in 1946 and has a seventh or eighth grade education. [Tr. 44, 123]. His past relevant employment is as a janitor and furniture assembler. [Tr. 53]. Plaintiff stands 6' 2" tall and weighs up to 270 pounds. [Tr. 95-96]. He claims to now be able to do nothing more than "walk through the house . . . bathe and shave and eat" due to constant total-body pain which he rates at a level of 10/10 irrespective of position or activity. [Tr. 61, 73-74, 76].

III.

*Relevant Medical Evidence and Opinions*

A. <u>Dr. Hood</u>

Dr. Michael Hood, and other persons associated with Dr. Hood's medical practice, treated plaintiff in 1997, 1998, and 2002 through 2004. Treatment was for episodic issues such as knee pain [Tr. 116], vertigo [Tr. 102, 107], toe pain [Tr. 104, 113-15], tick bite [Tr. 104], tendonitis [Tr. 103], mole removal [Tr. 102-03], and reflux associated with a moderate sliding hiatal hernia [Tr. 104, 110, 112]. Dr. Hood treated plaintiff for recurrent kidney stones on June 29, 2004. [Tr. 99]. Plaintiff's reflux was at that time well-controlled [Tr. 100]. He reported knee, ankle, and hip pain but was without discomfort in the back, elbow, or shoulders. [Tr. 101]. Dr. Hood treated plaintiff again in November 2004 for neck, left elbow, and left leg pain which was possibly interfering with a planned crossbow hunt. [Tr. 98].

Plaintiff's next visits with Dr. Hood were on May 10 and 20, 2005, for treatment of recurrent kidney stones. [Tr. 96-97]. No arthritic complaints were noted, and plaintiff was described as "[i]n no distress at this time with pain." [Tr. 96].

The administrative record shows two appointments with Dr. Hood after plaintiff's alleged disability onset date of June 15, 2005. On July 11, 2006, plaintiff presented with complaints of arm and neck pain, arm numbness, and left leg cramps. Dr. Hood noted a 50% reduced range of motion in the neck that date. [Tr. 95]. An x-ray showed

3

"degenerative discs between C5-6 and C6-7." [Tr. 109]. Dr. Hood wrote,

> Degenerative discs at C5-6 with radiculopathy in the left sensory and in the arms and left lower leg indicating some potential for some spinal cord stenosis.
> . . .
>
> . . . At this time in my opinion he is 100% disabled with this and will not be able to work with this type of problem.

[Tr. 95]. Plaintiff returned to Dr. Hood's office the following month with the chief complaint of back pain. The only notation of record is that the medication Ketoprofen "helped neck pretty good." [Tr. 95].

## B. Dr. Page

At the Commissioner's request, Dr. Wayne Page examined plaintiff in May 2006. Plaintiff was described as a "poor historian" who stopped working in 2005 because "he lost his job because he was not dependable because of jury duty." [Tr. 122-23]. Plaintiff would not tell Dr. Page what his normal activities are on a typical day. [Tr. 123].

Plaintiff offered "vague" respiratory and mental health complaints "but g[ave] no specifics." [Tr. 123-24]. He complained of loss of hearing, consistent with his administrative hearing testimony. [Tr. 123, 193]. Dr. Page nonetheless observed that plaintiff exhibited "normal hearing for conversational tones." [Tr. 124].

Dr. Page described plaintiff musculoskeletally, including the neck, back, and extremities, as, "Normal in all respects including strength, range or motion and muscle condition" with no radiculopathy. [Tr. 124-25]. Plaintiff was

4

> well developed, well nourished, alert, and oriented x 4 in no apparent distress . . . . He is judged cooperative and reliable with normal gait, posture, appearance, and station. No difficulty getting off and on the exam table or up from a chair. No assistive device used or indicated. . . . He has normal mobility, normal ability to grasp and manipulate objects . . . .
>
> . . .
>
> The examinee is obese. The obesity does not appear to negatively impact function or cause mechanical limitation, dyspnea or fatigue. It does not adversely affect examinee's ability to walk, sit, stand, move about, turn, twist, bend, or lift.

[Tr. 124-25]. Dr. Page concluded,

> The examinee has an unremarkable examination. He gives as reason for not working, that he was not dependable because of jury duty. He gives no medical reason for not working.
>
> . . .
>
> There are no impairment-related physical limitations. No other impairment-related limitations. Reason for all conclusions, history and physical examination.

[Tr. 125-26].

### C. Dr. Frost

At the request of plaintiff's attorney, chiropractor William Frost examined plaintiff in approximately May 2007. [Tr. 151-54, 157]. Dr. Frost predicted that plaintiff's lifting would be limited, that he cannot sit or stand for more than one half hour each per workday, and that he cannot reach, handle, push, pull, climb, balance, crouch, kneel, crawl, or work around moving machinery. [Tr. 151-53]. Dr. Frost stated that plaintiff "appears to be unable to hold gainful employment." [Tr. 154]. In support of his opinions, Dr. Frost

5

cited: a decrease in strength during neurological evaluation; altered gait cycle; lumbar pain while sitting; muscle spasm during activity; apparent nerve damage; and possible cervical disc injury. [Tr. 151-52, 154, 157].

### D. State Agency Physicians

Dr. Denise Ball reviewed Dr. Page's report on June 15, 2006. Dr. Ball opined that plaintiff has no severe impairment. [Tr. 138, 140].

Dr. Saul Juliao reviewed the administrative record in September 2006. Primarily citing back and neck pain, Dr. Juliao opined that plaintiff has a "partial physical impairment" and would be restricted to medium work with some postural and environmental limitation. [Tr. 141-48].

### E. Dr. McConnell

At the ALJ's request, Dr. David McConnell performed and reviewed cervical, lumbosacral, and left hip x-rays in July 2007. [Tr. 195]. Dr. McConnell concluded that each x-ray showed "minimal" osteoarthritis. [Tr. 158-59].

## IV.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments under the Social Security Act if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).[1] Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id*.

V.

*Analysis*

As noted, the ALJ found at step two of his sequential analysis that plaintiff suffers from no severe impairment. Plaintiff argues that the ALJ should not have dismissed

---

[1] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

8

his case at that early stage. Specifically, he contends that the ALJ erred in disregarding the opinions of Drs. Hood, Frost, and Juliao. [Doc. 9, p. 7-8].

A claimant fails at step two if he does not demonstrate an "impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). Stated in the reverse, an applicant should be rejected at step two only if the alleged impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).

While, the "severe" impairment threshold of step two is a "*de minimis* hurdle . . . , Congress has approved the threshold dismissal of claims obviously lacking medical merit, because in such cases the medical evidence demonstrates no reason to consider age, education, and experience" at steps four and five. *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988) (citation omitted). This severity threshold "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

On substantial evidence review, the court cannot conclude that plaintiff has met his burden of proving an "impairment or combination of impairments which *significantly*

limits his physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (emphasis added). There exists in the present case wildly inconsistent opinion evidence from treating and/or examining sources. The substantial evidence standard of review allows ALJs a "zone of choice" in which to resolve such conflicting evidence. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Dr. Hood is a treating physician, and the opinion of a treating physician may be entitled to great weight when supported by sufficient clinical findings consistent with the evidence. *See, e.g., Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). However, the Commissioner is not required to accept a treating physician's opinion if it is not supported by sufficient medical data and if a valid basis is articulated for the rejection. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). In the present case, the ALJ adequately explained his reasoning in a manner satisfactory under *Shelman*.

As noted by the ALJ [Tr. 13], Dr. Hood had not treated or even seen plaintiff in almost fourteen months prior to opining that he is "100% disabled," and at that prior appointment plaintiff was in "no distress at this time with pain." *See* 20 C.F.R. § 404.1527(d)(2)(i) (value of treating physician opinion lessened if the treating source has not "seen you a number of times and long enough to have obtained a longitudinal picture of your impairment."). As also noted by the ALJ [Tr. 14], the decision of whether a claimant is "100% disabled" is an issue reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(1), and Dr. Hood's opinion is inconsistent with other objective and laboratory evidence. *See* 20

10

C.F.R. § 404.1527(d)(4).

Although Dr. Hood's file contains an x-ray notation of "degenerative discs between C5-6 and C6-7," that notation in no way addresses the severity of degeneration, whereas Dr. McConnell's subsequent (and more thorough) x-ray report found no more than "minimal" osteoarthritis. [Tr. 158-59]. It is also noteworthy that, one month after Dr. Hood's assessment of "100% disability," plaintiff reported that his neck had been "helped pretty good" by the medication Ketoprofen. [Tr. 95]. Dr. Page's examination findings, which were quite close in time to Dr. Hood's opinion, totally contradict Dr. Hood's assessment and observations. These facts are consistent with the episodic and sporadic nature of plaintiff's relationship with Dr. Hood. Further, although Dr. Page is not a treating source, he appears to have examined plaintiff as much or more than Dr. Hood during the relevant time period.

A treating physician's views may be disregarded "when good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). The ALJ did so in this case, and there was no error.

The ALJ also adequately explained his rejection of chiropractor Frost's assessment as based upon a one-time examination and as inconsistent with other objective evidence. [Tr. 14]. Again, ALJs are afforded a "zone of choice" in which to resolve conflicting evidence. *Mullen*, 800 F.2d at 545.

Lastly, the court finds no error in the ALJ's rejection of nonexamining Dr. Juliao's RFC Assessment, which is Exhibit 5F of the administrative record. Dr. Juliao reviewed the records of Drs. Hood and Page in reaching his conclusions. [Tr. 142-43]. As discussed, the ALJ articulated his rationale for crediting Dr. Page's views over those of Dr. Hood. [Tr. 13]. The ALJ then wrote, "Based on the foregoing [in clear reference to his immediately preceding discussion of the examining and treating source evidence] . . . The State Agency medical consultant's opinion set out in Exhibit 5F is rejected." [Tr. 14]. The ALJ therefore did not err in insufficiently articulating his rationale for not adopting Dr. Juliao's assessment.

Substantial evidence supports the ALJ's identification of plaintiff, "at an early stage[, as a] claimant[] whose medical impairments are so slight that it is unlikely he would be found to be disabled even if his age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. The ALJ's decision was consistent with the opinions of Drs. Page, Ball, and McConnell, and the ALJ adequately explained his rejection of the opinions of Drs. Hood, Frost, and Juliao. A decision of the Commissioner is not subject to reversal merely because a reasonable mind could have reached the opposite conclusion. *See, e.g., Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

12

The Commissioner's final decision will therefore be affirmed, and an order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge